**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2015 MSPB 38**

Docket No. CH-1221-11-0498-B-1

**Francis A. Mithen,**

**Appellant,**

**v.**

**Department of Veterans Affairs,**

**Agency.**

May 28, 2015

Kurt Cummiskey, Esquire, Saint Louis, Missouri, for the appellant.

Paul Petraborg, Esquire, Saint Louis, Missouri, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## OPINION AND ORDER

¶1      The appellant has filed a petition for review of the initial decision, which denied his request for corrective action in a remanded individual right of action (IRA) appeal.  For the following reasons, we GRANT the petition for review, VACATE the finding on an abandoned claim, REVERSE the finding that the appellant did not make a protected disclosure, FIND that the agency has proven by clear and convincing evidence that it would have taken the same action absent his protected disclosure, and DENY the appellant's request for corrective action.

BACKGROUND

¶2    The appellant is alleging that the agency indefinitely detailed him from the Program Manager of Neurology position at the Saint Louis Veterans Administration Medical Center (VAMC) to a Staff Neurologist position in reprisal for whistleblowing. *Mithen v. Department of Veterans Affairs*, MSPB Docket No. CH-1221-11-0498-W-1, Initial Appeal File (IAF), Tabs 1, 7. The VAMC is affiliated with Saint Louis University (SLU). Hearing Transcript (HT) at 11. The appellant has been a full-time employee at the VAMC and affiliated with SLU since July 1, 1983. IAF, Tab 31 at 5. The appellant also had been the VAMC Residency Program Coordinator, supervising medical residents from SLU who worked in the Neurology Department. IAF, Tab 1, Attachment 1. In early September 2010, prior to the appellant's disclosure, the Chairman of Neurology and Psychiatry at SLU (SLU Chairman) informed the VAMC that several residents had complained about the appellant's conduct. IAF, Tab 12 at 17-19. On or about September 13, 2010, the agency convened an Administrative Investigative Board (AIB) to investigate the complaints. *Id.* at 93-95. During the AIB investigation, the appellant, at the agency's direction, abstained from his collateral duties as the VAMC Residency Program Coordinator for Neurology but continued as the Program Manager for Neurology. IAF, Tab 31 at 6. The AIB issued a report on January 24, 2011, which concluded as follows: (1) communications and interactions between the appellant and some of the residents were generally poor during the SLU rotations at the VAMC; (2) in some instances, the appellant had unreasonable expectations of some trainees; (3) poor customer service was a concern in some instances; and (4) unprofessional conduct also was a concern. IAF, Tab 12 at 181-83.

¶3    On March 2, 2011, the VAMC Executive Board approved a reorganization which dissolved Specialty Care, including the Neurology Program. *Id.* at 187, 191-92. The reorganization created new positions, including the Chief of Neurology, the Chief of Psychiatry, and the Chief of Anesthesiology, reporting

directly to the Chief of Staff. *Id.* The new Chief of Neurology position encompassed the appellant's duties as VAMC Residency Program Coordinator for Neurology and his duties as Program Manager for Neurology. *Id.* The new Chief of Neurology position was going to be advertised for applicants. IAF, Tab 31 at 6-7.

¶4      On March 24, 2011, the VAMC Acting Chief of Staff (Acting Chief) and Specialty Care Associate Chief of Staff, the appellant's supervisor, met with the appellant to discuss the AIB's recommendations. HT at 110. During this meeting, the Acting Chief told the appellant that the VAMC would undergo a reorganization that would include advertising a Chief of Neurology position, for which the appellant could apply, and that SLU would collaborate with the VAMC in the selection decision. HT at 115-23, 186-89. The appellant alleges that, during this meeting, the Acting Chief told him that the SLU Chairman held "veto power" over the selection of a new Chief of Neurology. IAF, Tab 7 at 2, Exhibit (Ex.) A. During the meeting, the appellant was told to continue having no interaction with the residents and medical students. IAF, Tab 33, Subtab O.

¶5      On March 25, 2011, the appellant sent a memorandum entitled "Improper Influence" to the Human Resources Manager, Acting Chief of Staff, and Director of the VAMC. IAF, Tab 7, Ex. A. In the memorandum, the appellant asserted that the SLU Chairman: (1) caused an unsubstantiated investigation of the appellant; and (2) had "veto power" over the selection for the Chief of Neurology position at the VAMC. *Id.* The appellant has alleged that this March 25, 2011 memorandum is his protected whistleblowing disclosure. IAF, Tab 7 at 2.

¶6      On March 28, 2011, the SLU Chairman memorialized a discussion with the Acting Chief from the previous day informing her that SLU was restricting its residents' activities at the VAMC Neurology Department. IAF, Tab 33, Subtab G. By memorandum dated April 5, 2011, the VAMC Director informed the appellant that, effective April 6, 2011, he would be detailed to a Staff Neurology position and relieved of any responsibility related to the Neurology

Residency Program. IAF, Tab 1, Attachment 2. After seeking corrective action through the Office of Special Counsel, the appellant filed this IRA appeal. IAF, Tab 1.

¶7    The administrative judge found that the Board had jurisdiction over the appellant's IRA appeal. IAF, Tab 30 at 3. Following a hearing, the administrative judge issued an initial decision finding that the appellant failed to show that he made a protected disclosure. IAF, Tab 37, Initial Decision (ID) at 5-9. The administrative judge also found that, assuming the appellant had made a protected disclosure, he met his burden of showing that the disclosure was a contributing factor in the agency's actions by satisfying the knowledge/timing test. ID at 10. The administrative judge found, however, that the agency showed by clear and convincing evidence that it would have detailed the appellant even absent the disclosure. ID at 11-14. The appellant filed a petition for review of this initial decision, which the Board granted. *Mithen v. Department of Veterans Affairs*, 119 M.S.P.R. 215, ¶ 1 (2013).

¶8    The Board issued a remand order affirming the initial decision's finding concerning contributing factor but stating that the administrative judge should make appropriate credibility determinations in deciding whether the appellant proved by preponderant evidence that he made a protected disclosure and whether the agency proved by clear and convincing evidence that it would have detailed the appellant from his position even absent his disclosure. *Id.*, ¶¶ 23-24. The remand order also stated that the administrative judge was to apply the guidance provided by the court in *Whitmore v. Department of Labor*, 680 F.3d 1353 (Fed. Cir. 2012), in determining whether the agency proved by clear and convincing evidence that it would have detailed the appellant from his position in the absence of the disclosures contained in his March 25, 2011 memorandum. *Mithen*, 119 M.S.P.R. 215, ¶¶ 19, 24.

¶9    On remand, the administrative judge gave both parties an opportunity to file additional briefs addressing the issues identified in the Board's remand order.

*Mithen v. Department of Veterans Affairs*, MSPB Docket No. CH-1221-11-0498-B-1, Remand Appeal File (RAF), Tab 9. After receiving both parties' briefs, the administrative judge issued an initial decision denying the appellant's request for corrective action. RAF, Tab 14, Remand Initial Decision (RID). The administrative judge found that the appellant failed to show that he reasonably believed his disclosure evidenced an abuse of authority. RID at 4-16. The appellant has filed a petition for review arguing that the administrative judge failed to make the credibility determinations required by the remand order and in accordance with the Board's precedent. *Mithen v. Department of Veterans Affairs*, MSPB Docket No. CH-1221-11-0498-B-1, Remand Petition for Review (RPFR) File, Tab 1.

## ANALYSIS

¶10 As a preliminary matter, the Board found in its decision on the appellant's first petition for review that he had not contested the administrative judge's finding that his disclosure concerning the investigation was not a protected disclosure. *Mithen*, 119 M.S.P.R. 215, ¶ 14 n.10. The Board did not consider this issue on review and did not remand this issue to the administrative judge. *Id.* We agree with the appellant that this issue was abandoned, RPFR File, Tab 1 at 5, and we VACATE the initial decision's findings on this matter.

The administrative judge properly applied the *Hillen* factors in making the required credibility determinations.

¶11 On review, the appellant argues that the administrative judge erred in her credibility determinations. RPFR File, Tab 1 at 6. Specifically, he argues that the credibility determinations are incomplete because, although the administrative judge cites to the factors articulated in *Hillen v. Department of the Army*, 35 M.S.P.R. 453 (1987), the initial decision does not contain a detailed explanation as to why she found the agency's version of events more credible than the appellant's. RPFR File, Tab 1 at 6-7. The appellant also argues that several relevant *Hillen* factors were not considered. *Id.* at 11-14. Finally, the

appellant argues that, in applying several *Hillen* factors, the administrative judge erred in analyzing the relevant evidence. *Id.* at 15-18.

¶12    The Board must give deference to an administrative judge's credibility determinations when they are based explicitly or implicitly on the observation of the demeanor of witnesses testifying at a hearing. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). The appellant appears to argue that the administrative judge could not properly assess demeanor because the hearing was held via video conference. RPFR File, Tab 1 at 7. The appellant did not object to the hearing being held via video conference. Moreover, the appellant has not identified any problem with the video conference that would undermine the administrative judge's ability to assess the witnesses' demeanor. *See, e.g.*, *Vicente v. Department of the Army*, 87 M.S.P.R. 80, ¶ 8 (2000) (the video conference was interrupted throughout with technical difficulties); *Perez v. Department of the Navy*, 86 M.S.P.R. 168, ¶ 7 (2000) (the administrative judge's view was primarily of the back of the witnesses' heads and sometimes a profile view). In this appeal, the administrative judge appears to have taken particular care to ensure that she could fully observe each witness as they testified. *See, e.g.*, HT at 6-7, 65, 68, 110. We find no error in the administrative judge's citing to demeanor in her credibility analysis. *E.g.*, ID at 14-15.

¶13    The appellant cites to *Frey v. Department of Labor*, 359 F.3d 1355 (Fed. Cir. 2004), for the proposition that a conclusory citation to demeanor as the deciding factor in a credibility determination should not be granted deference. RPFR File, Tab 1 at 7. We do not agree with the appellant's interpretation of the *Frey* decision. The court in *Frey* stated that the evaluation of witness credibility is a matter within the administrative judge's discretion and is "virtually unreviewable." *Frey*, 359 F.3d at 1361. Even if we were to apply the appellant's interpretation of *Frey*, there is no indication in the initial decision that the administrative judge relied on demeanor as the "deciding factor" in making her credibility determination. The Board has stated that an administrative judge's

credibility determination is not owed deference where the findings are incomplete, inconsistent with the weight of the evidence, and do not reflect the record as a whole. *Faucher v. Department of the Air Force*, 96 M.S.P.R. 203, ¶ 8 (2004). After a thorough review of the record, we find that the administrative judge's credibility determinations are complete, consistent with the weight of the evidence, and supported by the record.

¶14 The appellant argues that the administrative judge's findings are incomplete because she failed to consider relevant *Hillen* factors. RPFR File, Tab 1 at 6-14. Specifically, the appellant argues that the administrative judge failed to consider the appellant's character, the consistency of his version of events and the record evidence, his opportunity and capacity to observe the event in question, and the inconsistency of the Acting Chief's statements about whether the agency could have handled the recommendations of the AIB differently, why she consulted with agency counsel, and whether she told the appellant that the SLU Chairman held "veto power" over the selection for the new Chief of Neurology. *Id.* An administrative judge's failure to mention all of the evidence of record does not mean that she did not consider it in reaching her decision. *Diggs v. Department of Housing & Urban Development*, 114 M.S.P.R. 464, ¶ 8 (2010). Not specifically discussing every evidentiary matter or *Hillen* factor does not mean that an administrative judge failed to consider them. *See Neff v. Department of the Treasury*, 39 M.S.P.R. 142, 145 (1988), *aff'd*, 884 F.2d 1398 (Fed. Cir. 1989).

¶15 Both the appellant and the Acting Chief had equal opportunity and capacity to observe the March 24, 2011 meeting when the Acting Chief allegedly told the appellant that the SLU Chairman could exercise "veto power" in the selection of the new Chief of Neurology, so this particular *Hillen* factor does not suggest that either version of what occurred during the meeting is more credible than the other. Similarly, there is no evidence in the record that the character of the appellant, or any of the witnesses who testified at the hearing, renders that person

more prone to testify untruthfully. *See Hillen*, 35 M.S.P.R at 459. The facts that the appellant relies on to impeach the Acting Chief's character, such as the Acting Chief's holding the Acting Chief of Staff position when the appellant made his disclosures, but holding the presumably lower position, Deputy Chief of Staff, at the time of the hearing, RPFR File, Tab 1 at 12, are not relevant in assessing her character.

¶16      The appellant argues that his nonselection for the Chief of Neurology position proves that the SLU Chairman exercised "veto power" in the selection process, and therefore his version of events is more credible. *Id*. at 7-9. The appellant claims that he sought to offer evidence on remand that had not been available at the prior hearing concerning his nonselection for the Chief of Neurology position, but the administrative judge concluded that she needed no further evidence. *Id*. at 7-8. The record reflects that the parties participated in a discovery conference call with the administrative judge during which the appellant's request for the "promotion package" for the Chief of Neurology position was discussed. IAF, Tab 7. The administrative judge instructed the appellant to file a motion for any disputed discovery requests. *Id*. The appellant did not file a motion to compel discovery. The record does not contain evidence about who participated in the selection for the Chief of Neurology position. The appellant's nonselection is insufficient evidence to prove that the SLU Chairman exercised "veto power" during the selection process, and we find it immaterial to the credibility determination.

¶17      On review, the appellant has cited three statements by the Acting Chief that he argues show inconsistencies in her testimony. RPFR File, Tab 1 at 13-14. The first statement comes from the parties' joint stipulations. The parties jointly stipulated that the Acting Chief told the appellant during a meeting on March 24, 2011, that, "although she and the Director 'could have handled the matter differently,' there would be no disciplinary action against Appellant as a result of the AIB investigation." IAF, Tab 31 at 6. During the hearing, the Acting Chief

was asked whether she told the appellant the matter "could" be handled differently. HT at 109-10. In the same question she also was asked whether she told the appellant the matter "should" be handled differently. *Id.* She responded "that's something I don't recall saying—I did not say that." *Id.* We find the Acting Chief's testimony at the hearing is not inconsistent with the parties' joint stipulation because the compound form of the question the Acting Chief was asked means she could have been answering either of the two questions posed.

¶18 The appellant also alleges that the Acting Chief provided inconsistent testimony about her reason for consulting with agency counsel. RPFR File, Tab 1 at 13. Having reviewed the two statements cited by the appellant, we find these statements are not inconsistent. *Compare* HT at 114, *with* HT at 143. Based on our review of the record, we find that the Acting Chief provided consistent testimony concerning the material facts as found by the administrative judge. RID at 15.

¶19 Further, the appellant argues that the Acting Chief provided inconsistent testimony regarding whether she told the appellant that the SLU Chairman had "veto power" in the selection process. RPFR File, Tab 1 at 13. The appellant compares the Acting Chief's testimony that she did not recall referring specifically to the SLU Chairman during the March 24, 2011 meeting but did recall discussing the collaborative approach between the VAMC and SLU, HT at 122, to her later testimony that she did not tell the appellant that the SLU Chairman had "veto power" over the selection decision, HT at 123, and argues that these statements are inconsistent with each other. Again, we find these statements are not inconsistent. The implication of the term "veto power" is that the SLU Chairman could overrule the selection decision made by the agency. The Acting Chief testified consistently that the VAMC and SLU operated in a cooperative manner; SLU would provide input into the selection decision, but the ultimate selection decision would be made by the VAMC. HT at 122-23, 144. Her testimony was corroborated by several witnesses. HT at 15-17, 48, 84-88.

As found by the administrative judge, the Acting Chief's testimony is also corroborated by the appellant's own understanding of the VAMC's standard operating procedures for the Residency Program. RID at 12.

¶20 The appellant argues that the administrative judge required him to demonstrate bias on the part of the Acting Chief on an irrelevant subject and then faulted him for not proving it. RPFR File, Tab 1 at 15. Specifically, the administrative judge stated, "the appellant did not show bias on the part of the Acting Chief in regards to his job performance or qualifications to become the Chief of Neurology." RID at 14. We find no error in the administrative judge's analysis of bias. Bias refers to a witness's relationships, influences, and experiences which might consciously or unconsciously affect her ability to testify impartially. *Hillen*, 35 M.S.P.R. at 459-60. The administrative judge did not require the appellant to show bias on the part of the Acting Chief in any particular area but appropriately examined circumstances or experiences between the appellant and the Acting Chief that might have reflected bias. RID at 14-15.

¶21 The appellant argues that the Acting Chief did not dispute the content of his "Improper Influence" memorandum until the appellant filed his appeal and did not initiate disciplinary action against the appellant for writing and distributing the memorandum, which are facts consistent with the appellant's version of events. RPFR File, Tab 1 at 9-10. The appellant raised this same argument before the administrative judge. RAF, Tab 11 at 16; RID at 14. We find these facts immaterial in determining whether the Acting Chief told the appellant that the SLU Chairman would exercise "veto power" in the selection of the new Chief of Neurology.

¶22 We have considered all of the arguments the appellant raised on review regarding the credibility determinations made by the administrative judge. The appellant's assertions constitute mere disagreement with the administrative judge's credibility determinations and fact findings. *See Diggs*, 114 M.S.P.R.

464, ¶ 8.  We find no basis to disturb the administrative judge's credibility determinations.

<u>The appellant has proven by preponderant evidence that he reasonably believed he was disclosing an abuse of authority.</u>

¶23    Having resolved the credibility issues and determined that the Acting Chief did not tell the appellant that the SLU Chairman had "veto power" in the selection decision, the administrative judge concluded that the appellant failed to prove by preponderant evidence that he made a protected disclosure.  RID at 16.  For the following reasons, we REVERSE and find that the appellant reasonably believed he was disclosing an abuse of authority.

¶24    An individual making a disclosure may be protected from retaliation for whistleblowing based on his reasonable belief that his disclosure evidenced one or more of the categories of wrongdoing listed in 5 U.S.C. § 2302(b)(8), even when his belief is mistaken.  *See Drake v. Agency for International Development*, 543 F.3d 1377, 1382 (Fed. Cir. 2008).  The test for determining whether an employee's belief regarding the disclosed matter is reasonable is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the agency evidence the wrongdoing disclosed.  *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999).  We agree with the administrative judge's finding that the Acting Chief did not explicitly tell the appellant that the SLU Chairman had "veto power" in the selection decision.[1]  However, we find

---

[1] The appellant argues that the administrative judge's finding that the appellant's disclosure was made in anticipation of litigation was "pure speculation" and improper. RPFR File, Tab 1 at 16.  The appellant's May 25, 2011 memorandum states, in part, that, if he were not selected for the Chief of Neurology position, he "intend[ed] to file a complaint with the Merit Systems Protection Board for the demotion from Chief of Neurology to mere staff neurologist."  IAF, Tab 29, Ex. R.  The administrative judge's finding that the memorandum was written in anticipation of litigation is reasonable considering this language.

that the appellant's belief that the SLU Chairman would have a dispositive role in the selection was reasonable.

¶25    On March 24, 2011, the Acting Chief and the appellant discussed the AIB report on residents' complaints concerning his conduct.  HT at 110.  Those complaints were brought to the attention of the VAMC by the SLU Chairman.  IAF, Tab 31 at 6.  The appellant was told that, based on the conclusions of the AIB, the agency would formulate a plan to help the appellant improve his communication skills and would review a sample of his consult requests to see if there were any irregularities.  HT at 115, 186-87.  In that same meeting, the Acting Chief explained to the appellant that the VAMC was going to undergo a reorganization that would include abolishing the appellant's current position, advertising a new position that would perform many of his current duties, and that SLU, as the VAMC's affiliate, would collaborate with the VAMC in the selection decision.  HT at 115-23, 186-89.  The discussion of the investigation, the reorganization, and the selection of the new Chief of Neurology in the same meeting could reasonably lead to the conclusion that these issues were interrelated.

¶26    It was reasonable for the appellant to conclude that SLU could veto the VAMC's choice for the Chief of Neurology position, as the Director of the VAMC testified that an affiliate like SLU plays "a significant role" in selections, and that both the affiliate and the VAMC had to agree on the selectee.  HT at 84-86.  It is undisputed that the designation of a Residency Program Coordinator had to be made with the concurrence of the affiliate.  IAF, Tab 1, Attachment 31-3 at 6.  It is also undisputed that the Chief of Neurology position included the Residency Program Coordinator duties.  *Id.* at 34-38.  It seems reasonable to conclude that the VAMC would not select a Chief of Neurology without SLU's concurrence.  Although this may not be "veto power" per se, it could reasonably have been interpreted as the equivalent.

¶27    For the purposes of the Whistleblower Protection Act, an abuse of authority occurs when there is an arbitrary or capricious exercise of power by a federal official or employee that adversely affects the rights of any person or that results in personal gain or advantage to himself or to preferred other persons. *Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 15 (2014). The disclosure that a nonfederal employee exercised what was the equivalent to "veto power" over the selection of an individual for a federal position would constitute a protected disclosure of an abuse of authority. *Mithen*, 119 M.S.P.R. 215, ¶ 15. Therefore, we conclude that, although the appellant's disclosure that the SLU Chairman would exercise "veto power" in the selection was not true, his belief that SLU would have a dispositive role in the selection of the Chief of Neurology was reasonable and therefore he established by preponderant evidence that he made a protected disclosure of an abuse of authority.

The agency has proven by clear and convincing evidence that it would have detailed the appellant from his position in the absence of his protected disclosure.[2]

¶28    The Board will order corrective action in an IRA appeal where an appellant shows by preponderant evidence that he engaged in whistleblowing and that the whistleblowing was a contributing factor[3] in the decision to take a personnel

---

[2] The administrative judge, having found that the appellant did not make a protected disclosure, did not determine on remand whether the agency had proven by clear and convincing evidence that it would have detailed the appellant absent his protected disclosure. However, the administrative judge's first initial decision contains her analysis of this issue. The appellant has requested that the Board decide whether the agency met its burden rather than remanding the appeal to the administrative judge for further adjudication on this issue. RPFR File, Tab 1 at 18-19. We agree that the record has been sufficiently developed on this issue and that remand is unnecessary. The appellant requested that the Board consider his arguments from his first petition for review in rendering our decision. *Id.*

[3] We find no basis to disturb the administrative judge's determination that the appellant showed via the knowledge/timing test that his disclosure was a contributing factor in the decision to detail him. *See* ID at 10.

action unless the agency shows by clear and convincing evidence that it would have taken the personnel action even absent the whistleblowing. *Wadhwa v. Department of Veterans Affairs*, 110 M.S.P.R. 615, ¶ 14, *aff'd*, 353 F. App'x 435 (Fed. Cir. 2009). Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established; it is a higher standard than preponderant evidence. 5 C.F.R. § 1209.4(e). In determining whether the agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the Board considers the strength of the agency's evidence in support of its action, the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision, and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).

¶29      The agency has proven by clear and convincing evidence that it would have detailed the appellant from his position even absent any protected disclosure. The Director of the VAMC testified that she made the decision to detail the appellant when SLU stated that it was going to withdraw its residents from the VAMC's Neurology Department. HT at 78-79, 89-90. A Senior Associate Dean of SLU confirmed that SLU was no longer going to rotate its residents through the Neurology Department because of problems with the learning environment. HT at 32-33. He also testified that it was not acceptable to SLU for the appellant to remain a supervisory medical staff member, nor was it acceptable to SLU for the appellant to make clinical assignments because of accusations that, in the past, he had given assignments to residents as punishment or in reprisal. HT at 44. The Acting Chief testified that the decision to detail the appellant was in response to SLU's decision to curtail significantly the rotation of residents through the Neurology Department. HT at 145-46. The record also contains contemporaneous correspondence between the VAMC and SLU corroborating this

testimony. IAF, Tab 12 at 199-201, 210-12. SLU retracted its decision regarding the changes to the residency program after the appellant was detailed out of his position. HT at 80. We acknowledge that the testimony concerning the changes SLU intended to make to the residency program varies from the complete withdrawal of residents from the program, HT at 78-80, to a significant curtailment in the residents' participation in the program, HT at 126, but those variations are explained by the varying degrees to which each of the witnesses was involved in the program.

¶30     The appellant argues that he had not been told the reason he was being detailed from his position until the hearing. *Mithen v. Department of Veterans Affairs*, MSPB Docket No. CH-1221-11-0498-W-1, Petition for Review (W-1 PFR) File, Tab 1 at 34-35, 39-40. However, the appellant testified that, when he was first told about the detail, he asked the Acting Chief why he was being detailed and she responded that SLU had informed the VAMC that it would remove all of their residents unless the appellant was removed as the Program Manager for Neurology. HT at 193. We find that, in the aggregate, this is very strong evidence that the agency's motive for detailing the appellant out of his position was to preserve the existing program with SLU for rotating residents in the VAMC Neurology Department.

¶31     The appellant argues that the AIB investigation did not identify any significant conduct or performance issues that would justify detailing him from his position. W-1 PFR File, Tab 1 at 37. We do not agree. Although the agency did not discipline the appellant as a result of the AIB investigation, the investigation noted several concerns that support the agency's decision to detail the appellant from his position. Specifically, the investigation concludes that the appellant had poor communication, not only between himself and the residents, but also between the neurology staff and other providers, that the appellant had unreasonable expectations of some trainees in some instances, that poor customer

service was a concern in some instances, and that the appellant's unprofessional conduct was also a concern.  IAF, Tab 33, Attachment D at 8-10.

¶32     The appellant also argues that the agency decided to detail him after already instructing him to have no interaction with the residents, and therefore the detail was unnecessary.  W-1 PFR File, Tab 1 at 38.  This presumes that SLU's decision to withdraw the residents was based solely on the appellant's direct interaction with the residents.  However, the Senior Associate Dean from SLU testified that there were other concerns about the working environment being provided for the residents, including the work hours they were being assigned and fears of retribution.  HT at 25.  The email from VAMC to SLU at the time of the appellant's detail includes an offer that he not only would have no contact with the residents but would have no involvement with anything related to the residents in an effort to persuade SLU to retain the residency program as it existed.  IAF, Tab 12 at 199.

¶33     We find that the Acting Chief had little motive to retaliate against the appellant because SLU's involvement in the selection identified in the appellant's disclosure was already well known and was in fact set out in the agency's own procedures.  RID at 11-12.  The involvement of SLU in the selection was required by SLU's accrediting organization and is also stated in the VAMC's Standard Operating Procedure for resident supervision.  RID at 11-12.  The appellant tried to explain the distinction between a selection requiring SLU's concurrence, as described in the agency's Standard Operating Procedure, and a selection that SLU could veto, as described in his protected disclosure, HT at 212-13, but we find this too fine a distinction to create a strong motive to retaliate.

¶34     In contrast, we find that the VAMC's motive to maintain its affiliation arrangement with SLU was very strong.  The Director of the VAMC testified that having the affiliation with SLU allowed the VAMC to provide the latest and greatest care for its patients.  HT at 99.  She testified that having students and residents rotate through the VAMC helped the agency to evolve and improve its

services and develop its research program. HT at 100. She testified that the loss of residents would cause temporary delays in care for the patients while the VAMC recruited physicians to perform the duties that had been performed by the residents. HT at 102. She also testified about the financial impact on the VAMC that the loss of the residents would create. HT at 102-03. The Acting Chief testified that a significant curtailment of the involvement of residents in the Neurology Department would have had a significant impact on patient care. HT at 126-27, 150-52. She testified that the mission of the Neurology Department was "intricately tied" to the residency program. HT at 133.

¶35    The appellant argues that the Acting Chief exaggerated and/or misrepresented these reasons for detailing him out of his position. W-1 PFR File, Tab 1 at 38-42. The appellant believes that the agency has exaggerated its reasons for detailing him because the Acting Chief stated that SLU had a report from its accrediting organization attributing the creation of a hostile work environment to the appellant, but the documentation from the accrediting organization does not reference the appellant or a hostile work environment specifically. *Id.* at 38-39. The appellant's summation of the Acting Chief's statement is not accurate. The Acting Chief stated that the accrediting organization's report indicated that a hostile work environment existed and that SLU assessed that this was related to the appellant. IAF, Tab 12 at 213. This is consistent with the testimony of the Senior Associate Dean that no single document led to SLU's conclusion that the appellant was contributing to a hostile environment for the residents, but the residents' surveys, the letters from SLU's accrediting organization, and the SLU Chairman's investigation, considered together, led to that conclusion. HT at 26-31.

¶36    The appellant asserts that the agency's failure to present evidence about whether it takes similar actions against employees who are not whistleblowers, but who are otherwise similarly situated, supports a finding that the agency failed to prove by clear and convincing evidence that it would have taken the same

action against the appellant in the absence of his protected disclosure. W-1 PFR File, Tab 1 at 42. The Board does not view the *Carr* factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but will weigh the factors together to determine whether the evidence is clear and convincing as a whole. *McCarthy v. International Boundary & Water Commission*, 116 M.S.P.R. 594, ¶ 44 (2011), *aff'd*, 497 F. App'x 4 (Fed. Cir. 2012), *cert. denied*, 134 S. Ct. 386 (2013). The Board has found under certain circumstances that an agency's failure to present evidence showing it took similar action against employees who were not whistleblowers, but who were otherwise similar to an appellant, supports a finding that the agency failed to prove by clear and convincing evidence that it would have taken the same action against an appellant in the absence of the protected disclosure. *See, e.g.*, *Chambers v. Department of the Interior*, 116 M.S.P.R. 17, ¶ 70 (2011). However, those cases include other indicia of retaliation not found here. *See, e.g.*, *id.*, ¶ 71. Given the strength of the agency's evidence regarding its reason for detailing the appellant and the very weak motive to retaliate, we find that the lack of evidence concerning similar employees who are not whistleblowers does not undermine the agency's clear and convincing evidence supporting its reason for detailing the appellant.

¶37        The appellant argues that the agency treated him differently than similar employees who had not made protected disclosures. W-1 PFR File, Tab 1 at 43. Specifically, the Residency Program Coordinator duties were added to the Chief of Neurology position, but were not added to the other Program Manager positions, so that SLU was required to provide input in the selection of the Chief of Neurology. *Id.* The vacancy announcements for these positions corroborate the appellant's argument. IAF, Tab 1, Attachment 31-3 at 23-38. However, the appellant testified that, for years, he simultaneously performed the duties identified in the vacancy announcement for the Chief of Neurology/Program Manager of Neurology position and the Residency Coordinator for Neurology.

HT at 177, 187-88. He also testified that his predecessor had done the same. *Id.* The consolidation of these duties into one position thus formalized what had already been the practice at the VAMC.

¶38 Although we have found that the appellant made a protected disclosure, for the reasons discussed above, we find that the agency has proven by clear and convincing evidence that it would have detailed the appellant from his position even in the absence of this disclosure. Therefore, the appellant's request for corrective action is DENIED.

## ORDER

¶39 This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

## NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request the United States Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction to review this final decision. The court

of appeals must receive your petition for review within 60 days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  You may choose to request review of the Board's decision in the United States Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both.  Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right.  It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm.  Additional information about the United States Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.  Additional information about other courts of appeals can be found at their respective websites, which can be accessed through http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the United States Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Merit Systems Protection Board neither endorses the services

provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:

_____
William D. Spencer
Clerk of the Board
Washington, D.C.