# United States Court of Appeals for the Federal Circuit

2008-3048

MATTHEW R. DRAKE,

Petitioner,

v.

AGENCY FOR INTERNATIONAL DEVELOPMENT,

Respondent.


Nicholas Woodfield, The Employment Law Group, P.C., of Washington, DC, argued for petitioner. With him on the brief was R. Scott Oswald.

Todd M. Hughes, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Jeffrey S. Bucholtz, Acting Assistant Attorney General; Jeanne E. Davidson, Director; and David D'Alessandris, Trial Attorney.

Appealed from: Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2008-3048

MATTHEW R. DRAKE,

Petitioner,

v.

AGENCY FOR INTERNATIONAL DEVELOPMENT,

Respondent.

Petition for review of the Merit Systems Protection Board in DC1221060128-B-1.

_____

DECIDED: October 7, 2008

_____

Before MICHEL, Chief Judge, MOORE, Circuit Judge, and O'GRADY, District Judge.*

MOORE, Circuit Judge.

Mathew R. Drake appeals a final decision of the Merit Systems Protection Board (MSPB or Board) finalizing an initial decision denying his request for corrective action. Drake v. Agency for Int'l Dev., 107 M.S.P.R. 251 (2007). Because the administrative judge (AJ) erred in concluding that Mr. Drake had not made a protected disclosure under 5 U.S.C. § 2302(b)(8), we reverse and remand.

BACKGROUND

Mr. Drake, a Foreign Service investigator with USAID (agency), was assigned to the Regional Inspector General's Office in Budapest, Hungary. On May 24, 2004, Mr.

_____

* Honorable Liam O'Grady, District Judge, United States District Court for the Eastern District of Virginia, sitting by designation.

Drake was charged with "[i]ntoxication caused by the use of alcohol while on official duty," based on his conduct while on temporary duty in Tbilisi, Georgia. In response to the charge, the agency proposed a five day suspension, which was later withdrawn.

During July and August 2004, Mr. Drake attended two parties at the U.S. Embassy in Budapest. On August 10, after attending the second party, Mr. Drake sent an e-mail, including pictures, to the agency's Acting Assistant Inspector General for Management stating that Mr. Drake "witnessed large amounts of alcoholic beverages being served, extensive toasting, and intoxication of USAID and Dept. of State Personnel while on duty, including the Deputy Chief of Mission, Mission Director, Regional Legal Advisor, Regional Inspector General, and other representatives of the U.S. government." Mr. Drake sent copies of the e-mail to his immediate supervisors and to the Acting Inspector General.

In response to Mr. Drake's e-mail, the USAID/OIG Special Investigations Division conducted an investigation which terminated in early September 2004. While the investigation found that alcohol had in fact been consumed by various high-level agency personnel during working hours, it concluded, based on a dictionary definition of intoxication, that "the investigation did not determine that RIG employees were legally intoxicated while on duty." Intoxication on duty is identified as an offense subject to disciplinary action in the "list of disciplinary offenses and penalties" contained in the Department of State's Foreign Affairs Manual. See 3 FAM 4542.

On September 8, 2004, less than one month after Mr. Drake sent the e-mail, his supervisor, Special Agent in Charge Donna Dinkler, wrote a memorandum that indicated Mr. Drake should be transferred to Washington, D.C. effective September 11,

2004, because "Mr. Drake's services are no longer needed in Budapest, Hungary." Upon being informed that he was being reassigned, Mr. Drake promptly filed a complaint with the Office of Special Counsel (OSC) alleging that his reassignment was in retaliation to his whistleblowing activity, i.e., his e-mail. Following the issuance of a final closure letter informing Mr. Drake that OSC would take no further action regarding his complaint, Mr. Drake filed an Individual Right of Action (IRA) appeal requesting a hearing with the Board. On February 14, 2006, without conducting a hearing, the AJ found that Mr. Drake had "not made a nonfrivolous allegation that he engaged in whistleblowing activity," and accordingly dismissed the IRA appeal for lack of jurisdiction.

In response to Mr. Drake's petition for review of this first initial decision, the Board held that Mr. Drake had made nonfrivolous allegations and granted his petition, reversing the initial decision and remanding the appeal for further adjudication. Drake v. Agency for Int'l Dev., 103 M.S.P.R. 524, 527-30 (2006).

On January 18, 2007, following a hearing, the AJ found that while Mr. Drake had proven: (1) that his disclosure was a contributing factor in his reassignment and (2) that the agency had not shown that it would have taken the reassignment action in the absence of the disclosure, his disclosure was not a protected disclosure pursuant to 5 U.S.C. § 2302(b)(8). Consequently, the AJ denied Mr. Drake's request for corrective action.

Mr. Drake filed a petition for review of the second initial decision on February 21, 2007, which was denied on October 18, 2007. Mr. Drake timely filed this appeal.

2008-3048                                    3

DISCUSSION

This court has jurisdiction over petitions for review of MSPB decisions under 28 U.S.C. § 1295(a)(9), pursuant to the procedures in 5 U.S.C. § 7703. Accordingly, we must set aside Board decisions we find "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); Cheeseman v. Office of Pers. Mgmt., 791 F.2d 138, 140 (Fed. Cir. 1986).

To establish a violation of the Whistleblower's Protection Act (WPA), we require proof of four elements:

> (1) the acting official has the authority to take, recommend, or approve any personnel action; (2) the aggrieved employee made a disclosure protected under [5 U.S.C.] 2302(b)(8); (3) the acting official used his authority to take, or refuse to take, a personnel action against the aggrieved employee; (4) the acting official took, or failed to take, the personnel action against the aggrieved employee because of the protected disclosure.

Lachance v. White, 174 F.3d 1378, 1380 (Fed. Cir. 1999) (citations omitted). The AJ concluded that Mr. Drake satisfied elements 1, 3, and 4. See Drake v. Agency for Int'l Dev., No. DC-1221-06-0128-B-1, 2007 MSPB LEXIS 4612, at *15 (M.S.P.B. Jan. 18, 2007) (Initial Decision) ("if the appellant's disclosure is found to be protected, he would be entitled to corrective action"). Therefore, the only issue before us is whether the AJ erred in concluding that Mr. Drake had not made a protected disclosure.

A protected disclosure under § 2302(b)(8) is defined in relevant part as:

> (A) any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences --
> (i) a violation of any law, rule, or regulation, or
> (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. . . .

5 U.S.C. § 2302(b)(8). The AJ determined that Mr. Drake's disclosure was not a protected disclosure under three separate theories: (1) that 3 FAM 4542 is not a law, rule, or regulation; (2) that, even if 3 FAM 4542 was a law, rule, or regulation, the violation was of "such a trivial nature" that Mr. Drake could not reasonably believe he was reporting a genuine violation; and (3) that, even if 3 FAM 4542 was a law, rule or regulation, a disinterested observer could not have concluded that Mr. Drake's disclosure evidenced a violation. We conclude that the AJ legally erred on all three.

First, the agency concedes that 3 FAM 4542 is a law, rule, or regulation under the WPA. Appellee Br. at 15 ("We concede that the administrative judge made an error of law in concluding that 3 FAM 4542 was not a law, rule or regulation pursuant to the [WPA].").

Second, the AJ misinterpreted our holdings in Langer v. Department of the Treasury, 265 F.3d 1259 (Fed. Cir. 2001) and Herman v. Department of Justice, 193 F.3d 1375 (Fed. Cir. 1999) in finding that Mr. Drake's e-mail was "a disclosure of a trivial violation [that] does not constitute a protected disclosure."

In Herman, prison officials copied the telephone logs of Dr. Herman, the former chief clinical psychologist for a federal prison camp, while investigating his alleged unauthorized telephone use. Dr. Herman asserted that this copying of his telephone logs may have compromised the confidentiality of employees who had called him as part of an Employee Assistance Program (EAP) and was therefore a violation of the prison's EAP directive. Dr. Herman further asserted that a memorandum he wrote complaining about the copying of his telephone logs amounted to a protected disclosure. This court, emphasizing that the telephone logs were not identified as

potentially confidential by being kept in a security-approved container as mandated by the EAP directive and that Dr. Herman could not show that any confidential information was actually copied, determined that the "copying of confidential information, if any, would have been inadvertent." Herman, 193 F.3d at 1381. Accordingly, we held that "the action by the agency was of such a trivial nature that Dr. Herman could not have reasonably believed that the agency was violating a law, rule, or regulation." Id. The court then held that Mr. Herman's disclosure was not protected because: "The WPA was enacted to protect employees who report genuine infractions of law, not to encourage employees to report arguably minor and inadvertent miscues occurring in the conscientious carrying out of one's assigned duties." Id. (quoting Frederick v. Dep't of Justice, 73 F.3d 349, 353 (Fed. Cir. 1996)).

In Langer, Mr. Langer complained that the IRS was allowing secretaries to open pink envelopes that might contain confidential information. Relying on Herman, we held that the relevant disclosures "evidence[d] disagreements Langer had with his supervisors regarding the formal policy for handling of the pink envelopes that might contain confidential grand jury information," and that "any actual viewing of grand jury material by a secretary would at most have been inadvertent." Langer, 265 F.3d at 1267. Furthermore, the court held that "the alleged violation concerned a rule not adopted by the agency, but rather a procedure personally established by Langer as an exception to general agency procedures." Id. Once again, as in Herman, we held that the disclosures were not protected because they did not report violations of any laws, rules or regulations, but rather reported "minor and inadvertent miscues occurring in the conscientious carrying out of a federal employee's assigned duties." Id.

We held in <u>Herman</u> that: "The determination of whether an employee has a reasonable belief that a law, rule, or regulation was violated turns on the facts of the particular case." <u>Herman</u>, 193 F.3d at 1382. Based on the facts of <u>Herman</u> and <u>Langer</u>, we further held that the relevant disclosures were not protected because they disclosed, at most, minor and inadvertent miscues occurring in the conscientious carrying out of one's assigned duties, not violations of laws, rules, or regulations. This is not such a case. Here, the facts do not show, nor has the agency asserted, that the alleged violations were inadvertent or that they occurred in the conscientious carrying out of assigned duties. The alleged intoxication of agency personnel reported by Mr. Drake was instead the result of deliberate and intentional consumption of alcohol during working hours and would result in a violation of a law, rule or regulation. Therefore, the AJ's reliance on <u>Herman</u> and <u>Langer</u> and their discussion of a trivial or de minimis exception is not appropriate in this case.[1] Unlike <u>Herman</u> and <u>Langer</u>, Mr. Drake reported intoxication which he could reasonably believe constituted a genuine violation of a law, rule, or regulation.

Third, the AJ erred with regard to the standard set forth in <u>Lachance v. White</u>, 174 F.3d 1378, 1381 (Fed. Cir. 1999). The AJ articulated the correct test that "in order to show that he reasonably believed 3 FAM 4542 had been violated, the appellant

---

[1] The trivial or de minimis idea comes from the statute itself. In 5 U.S.C. § 2302(b)(8)(A)(ii), the statute refers to "<u>gross</u> mismanagement, a <u>gross</u> waste of funds, an abuse of authority, or a <u>substantial</u> and specific danger to public health or safety. . . ." (emphasis added). Moreover, the legislative history indicates that the statute protects, for example, a "pentagon employee who discloses billions of dollars in cost overruns, the GSA employee who discloses widespread fraud, and the nuclear engineer who questions the safety of certain nuclear plants." <u>Herman</u>, 193 F.3d at 1379 (quoting S. Rep. No. 969, 95th Cong., 3d Sess. 8 (1978)).

would be required to show that a disinterested observer with knowledge of the essential facts known to and readily ascertainable by him reasonably could conclude that employees were intoxicated." In application, however, the AJ required Mr. Drake to show that intoxication was the cause of the behavior he observed and reported. In analyzing Mr. Drake's disclosure, the AJ conceded that the reported activities were "all behaviors that an intoxicated individual might engage in," but then found that they were also "behaviors that an enthusiastic partygoer who was not intoxicated might engage in." Relying on the possibility that the agency personnel might not have been intoxicated, the AJ noted that Mr. Drake failed to prove that "the behaviors he observed <u>were caused</u> by alcohol intoxication," and therefore held that "a disinterested observer could not reasonably conclude that [Mr. Drake's] disclosure evidenced a violation of 3 FAM 4542." <u>Initial Decision</u>, at *10 (emphasis added).

By requiring Mr. Drake to prove that the agency personnel were intoxicated, the AJ erroneously required Mr. Drake to prove that an actual violation occurred. This is in direct conflict with the standard set forth in <u>Lachance</u>. <u>See also</u> <u>Huffman v. Office of Pers. Mgmt.</u>, 92 M.S.P.R. 429, 433 (2002)("To establish that he held such a reasonable belief, an appellant need not prove that the condition disclosed actually established one or more of the listed categories of wrongdoing, but he must show that the matter disclosed was one which a reasonable person in his position would believe evidenced one of the situations specified in 5 U.S.C. § 2302(b)(8)."). The AJ erred by requiring Mr. Drake to prove that the behavior he observed was in fact caused by intoxication. The test is not whether Mr. Drake was able to prove intoxication, but rather could a disinterested observer with knowledge of the essential facts known to and readily

ascertainable by Mr. Drake reasonably conclude that agency personnel were intoxicated and that a violation did occur. Applying the proper legal test, the undisputed findings of the AJ lead to but one conclusion – Mr. Drake made a protected disclosure.

## CONCLUSION

Because the AJ erred by finding that that Mr. Drake had not made a protected disclosure under 5 U.S.C. § 2302(b)(8), we reverse and remand for the Board to determine the appropriate corrective action to which Mr. Drake is entitled consistent with this opinion.

## REVERSED and REMANDED