NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3061

FAROUK ELKASSIR,

Petitioner,

v.

GENERAL SERVICES ADMINISTRATION,

Respondent.

Farouk Elkassir, of Fort Lee, New Jersey, pro se.

A. Bondurant Eley, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were Jeanne E. Davidson, Director, and Kirk T. Manhardt, Assistant Director.

Appealed from: Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3061

FAROUK ELKASSIR,

Petitioner,

v.

GENERAL SERVICES ADMINISTRATION,

Respondent.

Petition for review of the Merit Systems Protection Board in
NY1221080264-W-1.

_____

DECIDED: May 11, 2009
_____

Before BRYSON, LINN, and MOORE, <u>Circuit Judges</u>.

PER CURIAM.

DECISION

Farouk Elkassir, an employee of the General Services Administration ("GSA"),
filed a whistleblower complaint, known as an Individual Right of Action, with the Merit
Systems Protection Board. He sought corrective action for the GSA's having rated his
performance for October 1, 2006, through November 30, 2007, as "fully successful"
rather than "outstanding." He alleged that the agency assigned him the lower rating in
retaliation for a protected disclosure that he made concerning alleged misconduct by

others in the agency.  The Board denied his request for corrective action.  We <u>reverse</u> and <u>remand</u>.

## BACKGROUND

Mr. Elkassir works for GSA's Inventory Management and Commodity Support Branch in the agency's Office Supplies Acquisition Center in New York City.  His duties include writing the item purchase descriptions ("IPDs") for items that the Acquisition Center purchases, including the IPD for bulletin boards.  The events at issue in this case began in September 2007, when a shipment of bulletin boards was delivered to GSA's warehouse in French Camp, California.  After inspecting the bulletin boards, a GSA quality assurance specialist recommended rejecting them on the ground that "the bulletin board's frame is made of pine wood with a reddish mahogany color" while "per IPD requirements item's frame is to be made of oak wood."

After the quality assurance specialist filled out the notice of inspection, a chain of emails ensued.  First, an administrative contracting officer contacted the bulletin board vendor to inform the company of the pending rejection.  In response, the vendor forwarded an email from its supplier, which had stated that the bulletin boards "are indeed oak, not pine.  The only difference is the color of the stain."  After receiving that email, the quality assurance specialist forwarded it to Mr. Elkassir and the contracting officer along with the comment that "[t]he boards are actually particle board with a reddish color laminate, the color is very dark it could be an imitation oak laminate.  The IPD states oak wood, not imitation oak or oak laminate.  If you want me to rescind please make the appropriate modification to the IPD."

Mr. Elkassir responded by stating, "The boards should be oak wood as stated in the IPD.  If they are not oak wood, they should be returned, but you have to be sure."  The quality assurance specialist then forwarded the same email to Mr. Elkassir's second level supervisor, the branch chief, noting that the bulletin boards are "rejected status because it is not IAW [in accordance with] the IPD" and asking the branch chief if he should nonetheless make the bulletin boards available for issue.  The branch chief then forwarded the email to the section chief asking, "Can we let this one go, because we [have] so many back-orders on this item.  Material will be posted and gone with[in] on[e] day."  The section chief subsequently forwarded the email chain to Mr. Elkassir's team leader with the note: "Pls for your immediate (backorders) action.  Pls contact [the quality assurance specialist]."  Mr. Elkassir's team leader then wrote an email to the quality assurance specialist stating, "I have reviewed the IPD and have determined that the IPD will be modified to accept the delivered product.  The laminate additive does not fall within the 'Form, Fit, or Function' attributes that would prevent the issuance of the product.  In view of, it is recommended that product be released from hold status."  Upon receiving that email, the quality assurance specialist released the hold on the bulletin boards and said that they were ready for issue.

Mr. Elkassir responded to the last email by reporting the situation to his third-level manager, the director of operations.  In an email to the director, Mr. Elkassir stated, "[T]he management of my group (QSDABA) has again violated the rules of contracting by issuing a deviation to [the vendor] allowing the acceptance of pinewood bull[e]tin boards instead of oakwood, without going through the contracting officer, and without charging [the vendor] the difference in cost."  Mr. Elkassir also stated his belief

that "the government has lost thousands of dollars in this action." In addition, Mr. Elkassir referred to his team leader's having suggested that the IPD would be modified, remarking, "I am not in favor of changing the IPD, since it is a far far better way to supply our customers with Oakwood boards than pine as pine might lead many customers to buy the boards elsewhere. Again GSA will lose more money." Mr. Elkassir's email to the director was written on October 10, 2007.

The director reacted to Mr. Elkassir's email by asking the contracting officer about the details of what had been done, whereupon the contracting officer responded by noting that (1) the vendor had asserted that the wood was oak, (2) the Inventory and Commodity Support Branch requested that the product be approved "due to many back-orders," (3) the contracting officer had not modified the IPD, and (4) the contracting officer would have supported the quality assurance specialist's finding that the bulletin boards should be rejected for not meeting the IPD. The director then replied to Mr. Elkassir, informing him that the IPD had not been modified and that the vendor "is supplying oakwood." Mr. Elkassir answered the director's email by pointing out that the quality assurance specialist had in fact stated that the bulletin boards were made of pine wood.

On November 8, 2007, Mr. Elkassir received a performance appraisal for the October 1, 2006, through November 30, 2007, rating period in which he was rated Level 3 (fully successful) and was not rated Level 5 (outstanding). He then filed a complaint with the Office of Special Counsel alleging that his performance rating was lowered in retaliation for his having emailed the director about the bulletin boards. The Office of Special Counsel informed Mr. Elkassir that it would be unable to take any action

regarding the complaint. The office explained, "The primary reason for our determination not to take action on your complaint was the fact that we were unable to establish a connection between your lowered performance evaluation and your whistleblowing activity." Mr. Elkassir then filed an Individual Right of Action complaint with the Merit Systems Protection Board seeking corrective action under the Whistleblower Protection Act, 5 U.S.C. § 2302 et seq.

The administrative judge who was assigned to the case first noted that an employee who alleges that he has been retaliated against in violation of the Whistleblower Protection Act must demonstrate that he has made a disclosure protected under 5 U.S.C. § 2302(b)(8), which includes any disclosure of information that the employee reasonably believes evidences, among other things, "a gross waste of funds." As the administrative judge noted, "the proper test is this: could a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee reasonably conclude that the actions of the government evidence gross mismanagement?" Lachance v. White, 174 F.3d 1378, 1381 (Fed. Cir. 1999); see also Drake v. Agency for Int'l Devel., 543 F.3d 1377, 1380 (Fed. Cir. 2008). The administrative judge also pointed out that the employee does not have to prove actual wrongdoing in order to establish that he had a reasonable belief that his disclosure is in a protected category. Id.

In discussing the reasonableness of Mr. Elkassir's belief that the email he sent had revealed wrongdoing, the administrative judge pointed out that Mr. Elkassir had no personal knowledge about the composition of the bulletin boards. Based on that fact, the administrative judge concluded that Mr. Elkassir's assertion that the government

had lost money, and would continue to lose money, was unsupported. The administrative judge also noted that Mr. Elkassir's email was "fraught with factual errors." In particular, the administrative judge found that although Mr. Elkassir's email suggested that the vendor was issued a deviation from the contract, no deviation was actually issued, and that although Mr. Elkassir's email suggested that the deviation had been issued "without going through the contracting officer," the contracting officer was actually aware of what was being done with respect to the bulletin boards. Similarly, the administrative judge determined that Mr. Elkassir's criticism of "the management of his group" for failing to recoup costs from the vendor lacked merit because only the contracting officer could recoup such costs. Finally, the administrative judge concluded that, in light of the relatively small size of the contract, Mr. Elkassir's statement that the government had "lost thousands of dollars in this action" was baseless. In light of the errors in the email, the administrative judge concluded that Mr. Elkassir could not reasonably have believed that the email revealed wrongdoing. For that reason, the administrative judge concluded that Mr. Elkassir had not made a protected disclosure. The administrative judge therefore denied his request for corrective action. Mr. Elkassir now seeks review by this court.

## DISCUSSION

The administrative judge articulated the correct test for determining whether an employee has made a protected disclosure, as set forth in Lachance. The judge, however, erred in the application of that test. Mr. Elkassir was privy to a series of emails containing conflicting statements about whether the bulletin boards were made of oak or pine. While the agency's quality assurance specialist had initially said that

they were pine, the vendor insisted that they were made of oak. In response to that assertion, the quality assurance specialist stated, "The boards are actually particle board with a reddish color laminate." While the administrative judge is correct that Mr. Elkassir had no personal knowledge about the composition of the bulletin boards, in that he never inspected them himself, Mr. Elkassir need not demonstrate that an actual violation occurred in order to prevail on a whistleblowing retaliation claim. See Drake, 543 F.3d at 1382. Instead, the proper question is whether Mr. Elkassir could reasonably have thought that a violation had occurred. Here, the question is whether a disinterested observer with knowledge of the email chain could reasonably conclude that the bulletin boards were not made of oak and that by accepting them the agency had committed wrongdoing.

The quality assurance specialist stated that the bulletin boards were made of pine and that, in fact, they consisted of particle board with what might be an imitation oak laminate. After Mr. Elkassir advised the quality assurance specialist that he had "to be sure" that the bulletin boards were not made of oak, the quality assurance specialist rejected the bulletin boards as not being in accordance with the IPD. Under those circumstances, it was not unreasonable for Mr. Elkassir to represent to his superiors that the product was apparently not made of oak, as was required by the IPD.

As to whether a contract "deviation" had been improperly authorized by the management of his group without the approval of the contracting officer, Mr. Elkassir's email was sent shortly after he received an email from the team leader stating that "the IPD will be modified to accept the delivered product." In light of that email, it was reasonable for Mr. Elkassir to believe that the team leader had authorized a deviation,

and apparently without the approval of the contracting officer. The fact that no modification was issued does not render Mr. Elkassir's belief, at the time he wrote the email, unreasonable. Nor is it important that, as things turned out, the contracting officer was aware of what was being done with respect to the bulletin boards.

Finally, the administrative judge was correct in concluding that the loss to GSA from the particular contract that was the subject of the emails would not amount to "thousands of dollars," as the contract was only for a total of $1920.52. However, Mr. Elkassir's reference to the loss to GSA was not, by its terms, limited to the particular contract discussed in the emails, but appeared to refer to the change to the IPD, which would affect other contracts in the future. Again, Mr. Elkassir's concern about the potential financial effect of the change, even if presented only as rough approximation, does not appear to be "baseless."

Applying the proper legal test, the undisputed facts presented to the administrative judge lead to the conclusion that Mr. Elkassir made a protected disclosure when he emailed the director of operations on October 10, 2007. We therefore reverse the decision of the Merit Systems Protection Board with respect to that element of Mr. Elkassir's whistleblower retaliation claim and remand for the Board to determine whether the remaining elements of the claim have been established.