**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| ORVILLE W. J. LAYTON, | DOCKET NUMBER |
| Appellant, | SF-1221-14-0805-W-1 |
| v. | |
| DEPARTMENT OF THE AIR FORCE, | DATE: December 9, 2015 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Orville W. J. Layton, Eagle River, Alaska, pro se.

Lindsay Collins and Velma C. Gay, Joint Base Andrews, Maryland, for
the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which denied his request for corrective action in an individual right of action (IRA) appeal under the Whistleblower Protection Act of 1989 (WPA) as amended. Generally, we grant petitions such as this one only when:  the initial decision

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED by this Final Order to find that the appellant made a protected disclosure under 5 U.S.C. § 2302(b)(8) concerning Colorado State University (CSU), participated in protected activity pursuant to 5 U.S.C. § 2302(b)(9)(C), and proved that his protected disclosures and protected activity were a contributing factor in the agency's actions, we AFFIRM the initial decision and find that the agency proved by clear and convincing evidence that it would have taken the personnel actions in the absence of the protected disclosures.

## BACKGROUND

¶2      The appellant is an attorney working in the office of the Staff Judge Advocate (SJA) for the 673 Air Base Wing at Joint Base Elmendorf-Richardson (JBER). Initial Appeal File (IAF), Tab 1 at 2. He contends that the agency relieved him of most of his duties as an environmental law attorney and issued him a letter of reprimand in reprisal for his protected whistleblowing activity. *Id.* at 8-10. The appellant alleges that he made two whistleblowing disclosures to his supervisor on March 26, 2014, and that he was reassigned 2 days later. *Id.* at 8. First, the appellant disclosed process deficiencies and noncompliance with

procedures governing a controlled burn fire[2] that was to be conducted on the installation and that may have endangered the public. *Id*. Second, the appellant disclosed that he believed an improper relationship existed between JBER's Civil Engineering Squadron Environmental Section (CE) and CSU. *Id*. The appellant alleges that for several months prior to these disclosures he had raised concerns that CSU's services had been improperly procured and CSU employees were performing inherently governmental functions to his first-level and second-level supervisors and various other members of the installation's management. *Id.* at 8-9.

¶3    On March 31, 2014, the appellant filed a complaint with the Office of Inspector General (OIG) for the 673 Air Base Wing alleging, in part, that the installation's Wildland Fire Program Manager was a CSU contractor performing an inherently governmental function, and that flaws in the process for planning the controlled burn increased the risk of an accident. *Id.*, Exhibit (Ex.) 2 at 2, 7. On April 6, 2014, the appellant filed a complaint with the Office of Special Counsel (OSC) stating that he had been reassigned following a conversation during which he informed his first-level supervisor of a series of regulatory and statutory violations in planning the controlled burn fire. IAF, Tab 8 at 8, Tab 1, Ex. 3. In his OSC complaint, the appellant also states that he informed his first-level supervisor that he was concerned that failure to follow regulatory guidance for planning the controlled burns could jeopardize public safety and if immediate action was not taken to remedy the situation he would report it to the Inspector General. IAF, Tab 1, Ex. 3. The appellant's OSC complaint was accepted for investigation for possible violations of 5 U.S.C. § 2302(b)(8) and 5 U.S.C. § 2302(b)(9). *Id*., Ex. 6.

---

[2] A "controlled burn" is the deliberate start of a fire to reduce fuel or create fire breaks in an effort to reduce the potential for large, uncontrolled forest fires. IAF, Tab 6 at 5. The terms "controlled burn," "proscribed burn," and "prescribed burn" are used interchangeably by the parties and the administrative judge. *See, e.g.*, IAF, Tab 1 at 9, Tab 47 at 3.

¶4    On April 30, 2014, the appellant filed a complaint with the Department of Defense (DOD) OIG, which he also sent to a member of Congress, alleging that the U.S. Army and JBER were using CSU as the sole source for maintenance, construction, and personal services contracts, and CSU was performing inherently governmental functions. *Id.*, Ex. 4. In this complaint, the appellant states that he first became aware of "the peculiar relationship" between U.S. Army Alaska and CSU in 2003. *Id.* at 8. After prior notice and an opportunity to respond, the appellant received a letter of reprimand on June 24, 2014, for failing to follow his supervisor's instruction to copy him on all real estate and administrative law email correspondence. IAF, Tab 1, Ex. 5 at 5-7.

¶5    The administrative judge found that the Board has jurisdiction over the appellant's IRA appeal and, after holding a hearing on the merits, issued an initial decision finding that only the disclosures concerning the controlled burn fires met the definition of protected disclosures. IAF, Tab 47, Initial Decision (ID) at 20-26. The administrative judge further found that the agency showed by clear and convincing evidence that it would have reassigned the appellant and issued him a letter of reprimand in the absence of this disclosure. ID at 26-34.

¶6    The appellant has filed a petition for review arguing that the administrative judge erroneously concluded that his disclosures concerning CSU were not protected, failed to consider all of the evidence in finding that the agency met its burden by clear and convincing evidence, abused his discretion by denying the appellant's motion to compel discovery, issued arbitrary rulings on the admissibility of witnesses and evidence, and considered sua sponte irrelevant information pertaining to the appellant's prior IRA appeal. Petition for Review (PFR) File, Tab 1. The agency has filed a response opposing the petition for review. PFR File, Tab 3. The appellant has filed a reply to the agency's response. PFR File, Tab 4.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The appellant has proven by preponderant evidence that his disclosures concerning the controlled burn fires and CSU are protected disclosures under 5 U.S.C. § 2302(b)(8).</u>

¶7    In reviewing the merits of an IRA appeal based on an allegation of whistleblower reprisal, the Board must examine whether the appellant proved by preponderant evidence that he engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8), and that such whistleblowing activity was a contributing factor in an agency personnel action; if so, the Board must order corrective action unless the agency established by clear and convincing evidence that it would have taken the same personnel action in the absence of the disclosures. *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 17 (2013). An individual making a disclosure may be protected from retaliation for whistleblowing based on his reasonable belief that his disclosure evidenced one or more of the categories of wrongdoing listed in 5 U.S.C. § 2302(b)(8), even when his belief is mistaken. *See Drake v. Agency for International Development*, 543 F.3d 1377, 1382 (Fed. Cir. 2008). The test for determining whether an employee's belief regarding the disclosed matter is reasonable is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the agency evidence the wrongdoing disclosed. *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999). We agree with the administrative judge's finding that the appellant's disclosures concerning the controlled burns disclosed matters that a reasonable person in his position would have believed evidenced a substantial and specific danger to public health or safety. ID at 22-24.

¶8    The administrative judge found that the appellant's disclosures of an improper relationship between CE and CSU were not protected disclosures because a reasonable person could not have reached this conclusion based on the facts known to and readily ascertainable by the appellant. ID at 24-26. We

disagree, and we modify the initial decision to reflect that the appellant made a protected disclosure concerning CSU.

¶9 The appellant's disclosures regarding CSU are twofold. First, he alleges the cooperative agreement with CSU was not subject to the required competition, and state and Federal entities had not been given the right of first refusal, as required by the policy of the DOD on cooperative agreements under the Sikes Act.[3] PFR File, Tab 1 at 14-15. Second, he contends that the use of CSU contract labor violated Federal and agency regulations because CSU contractors performed inherently governmental functions. *Id*. at 14.

¶10 We agree with the administrative judge that the appellant failed to prove that he reasonably believed that his disclosure regarding the procurement of CSU's services evidenced a category of wrongdoing listed in 5 U.S.C. § 2302(b)(8). The appellant claims that he was told by CE that both the Bureau of Land Management and Anchorage Soil and Water Conservation District were approached and could not provide the needed support. IAF, Tab 6 at 4. He requested to see documents showing that these entities were unable to provide natural resources management support, but was not provided the requested documents. *Id*., Ex. A at 90. Based on the appellant's own description of facts, he possessed insufficient information to reasonably conclude that state and Federal entities were not given the right of first refusal. The documentary evidence also indicates reasonable disagreements about how to apply DOD's relatively new policy on cooperative agreements under the Sikes Act. *Id.* at 36-46, 116-18.

¶11 However, we find that the appellant's disclosure regarding the use of CSU contract labor was protected. The appellant has cited to a number of what he states are "controlling federal and agency regulations," which he believes the

---

[3] The Sikes Act, 16 U.S.C. § 670, provides for a cooperative effort by the agency with the DOD and with state agencies to promote the proper development, maintenance, and conservation of wildlife, fish, and game on military installations.

administrative judge failed to consider. PFR File, Tab 1 at 13. Included in these regulations is a general prohibition against contractors performing inherently governmental functions. 48 C.F.R. § 7.503. The appellant states that, according to Air Force Instruction 32-7064, natural resources management is an inherently governmental function. PFR File, Tab 1 at 14. This instruction specifically states that activities that require the exercise of discretion in making decisions regarding natural resources management and disposition of government-owned natural resources are inherently governmental functions. IAF, Tab 36, Ex. G5 at 53. While the same instruction states that the agency can use cooperative agreements for natural resources program management assistance and implementation, *id*. at 46, an appellant need only have a reasonable belief that his disclosure evidenced a category of wrongdoing under section 2302(b)(8), *see Lachance*, 174 F.3d at 1381.

¶12    Under the circumstances in this case, we find that the appellant established that he reasonably believed that his disclosure evidenced a violation of a law, rule, or regulation. The record is clear that CSU participated in managing and implementing the natural resources management program for the installation. Based on the record evidence, we find that the appellant proved that he had a reasonable belief that CSU contractors were performing inherently government functions through their involvement in natural resources management, in violation of Federal and agency regulations.[4]

---

[4] In finding that the appellant's disclosures concerning CSU were not protected, the administrative judge emphasized that the agency was not a party to the agreement with CSU. ID at 26. The Army Corps of Engineers manages the agreement on behalf of the entire DOD. IAF, Tab 6, Ex. A at 59. When he first made this disclosure, the appellant had not seen the terms of the cooperative agreement with CSU. We do not, however, find this to be dispositive in determining whether the appellant's disclosures concerning CSU were protected. The appellant has provided sufficient evidence and argument to prove that he had a reasonable belief that the contracting of CSU labor constituted a violation of law, rule, or regulation.

The appellant's complaint to the DOD OIG is protected activity under 5 U.S.C. § 2302(b)(9)(C).

¶13 Following the enactment of the Whistleblower Protection Enhancement Act, which became effective on December 27, 2012, an appellant also may file an IRA appeal with the Board concerning alleged reprisal based on protected activity as defined by 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), and (D). *Rebstock Consolidation v. Department of Homeland Security*, 122 M.S.P.R. 661, ¶ 5 (2015). Disclosing information to the Inspector General of an agency is protected activity under 5 U.S.C. § 2302(b)(9)(C). Because the appellant's complaint to the OIG for the 673 Air Base Wing concerned the controlled burn fires, and are protected disclosures under 5 U.S.C. § 2302(b)(8), they are not also protected activity under 5 U.S.C. § 2302(b)(9). *See Special Counsel v. Hathaway*, 49 M.S.P.R. 595, 612 (1991) (finding that disclosures that fall within the scope of 5 U.S.C. § 2302(b)(8) are not covered also by 5 U.S.C. § 2302(b)(9)), *aff'd*, 981 F.2d 1237 (Fed. Cir. 1992). The appellant's complaint to the DOD OIG concerning CSU did not contain protected disclosures under 5 U.S.C. § 2302(b)(8), as discussed *supra* ¶¶ 7-10, however, we find that this complaint is protected activity under 5 U.S.C. § 2302(b)(9)(C). *See Hathaway*, 49 M.S.P.R. at 612 n.20 (stating that 5 U.S.C. § 2302(b)(9) protects all disclosures to the Inspector General made in accordance with applicable provisions of law). The OSC investigated potential violations of both section 2302(b)(8) and section 2302(b)(9). IAF, Tab 6, Ex. A at 234. Therefore, we modify the initial decision to include a finding that the appellant participated in protected activity pursuant 5 U.S.C. § 2302(b)(9)(C) by filing a complaint with the DOD OIG.

The appellant has proven that his protected disclosures and protected activity were a contributing factor in the agency's actions by satisfying the knowledge-timing test.

¶14 To prevail in his reprisal claim, the appellant must prove by preponderant evidence that his protected disclosures or activity were a contributing factor in a

personnel action.  5 U.S.C. § 1221(e)(1).  One way to establish this criterion is the knowledge-timing test, under which an employee submits evidence showing that the official taking the personnel action knew of the disclosure or activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or activity was a contributing factor in the personnel action.  *Id.*; *Wadhwa v. Department of Veterans Affairs*, 110 M.S.P.R. 615, ¶ 12, *aff'd*, 353 F. App'x 435 (Fed. Cir. 2009).

¶15      The initial decision states that the appellant made a protected disclosure to his first-level supervisor on March 26, 2014, and was reassigned 2 days later.  ID at 26.  The initial decision also states that the appellant's first-level supervisor issued the letter of reprimand less than 3 months after this disclosure.  ID at 27.  The appellant filed a complaint with the DOD OIG on April 30, 2014, IAF, Tab 1, Ex. 4, which was after the reassignment, but less than 2 months before the letter of reprimand was proposed, IAF, Tab 6, Ex. A at 215-16.

¶16      The initial decision never expressly finds that the close proximity in time between the appellant's protected disclosures and activity to the agency's actions satisfies the knowledge-timing test.  The initial decision does state that the appellant failed to adequately support his assertion that his whistleblowing disclosures were a contributing factor in the agency's decision to reassign and reprimand him.  ID at 30-31.  Once the knowledge-timing test has been met, an administrative judge must find that the appellant has shown that his whistleblowing was a contributing factor in the personnel action at issue, even if after a complete analysis of all the evidence a reasonable factfinder could not conclude that the appellant's whistleblowing was a contributing factor.  *Carey v. Department of Veterans Affairs*, 93 M.S.P.R. 676, ¶ 13 (2003).  We modify the initial decision to find that the appellant has proven that his whistleblowing disclosures and protected activity were a contributing factor in the agency's actions reassigning him and issuing the letter of reprimand because he has satisfied the knowledge-timing test.

**The agency has proven, by clear and convincing evidence, that it would have reassigned and reprimanded the appellant absent his protected disclosures and protected activity.**

¶17    The Board will order corrective action in an IRA appeal if an appellant shows, by preponderant evidence, that he engaged in whistleblowing and that the whistleblowing was a contributing factor in the decision to take a personnel action unless the agency shows by clear and convincing evidence that it would have taken the personnel action even absent the whistleblowing. 5 U.S.C. § 1221(e)(2); *Wadhwa*, 110 M.S.P.R. 615, ¶ 14.  Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established; it is a higher standard than preponderant evidence.  5 C.F.R. § 1209.4(e).  In determining whether the agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of the whistleblowing, the Board considers the strength of the agency's evidence in support of its personnel action, the strength of any motive to retaliate on the part of the agency officials who were involved in the decision, and any evidence that the agency takes similar actions against employees who are not whistleblowers, but who are otherwise similarly situated.  *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).

¶18    Citing to the standard articulated in *Whitmore v. Department of Labor*, 680 F.3d 1353 (Fed. Cir. 2012), the appellant argues that the administrative judge failed to consider extensive evidence substantiating his whistleblower retaliation claim and rebutting the agency's evidence that it would have taken the same actions against him absent his protected disclosures.  PFR File, Tab 1 at 6, 12-13, Tab 4 at 5.  In *Whitmore*, the court held that evidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion.  *Whitmore*, 680 F.3d at 1368.  The court

further determined that it is error for the Board to not evaluate all the pertinent evidence in determining whether an element of a claim or defense has been proven adequately. *Id.* We have reviewed the entire record and find that it supports the administrative judge's finding that the agency proved by clear and convincing evidence it would have taken the same actions absent the appellant's protected disclosures and protected activity.

¶19 We agree with the administrative judge's finding that the agency presented strong evidence in support of the appellant's reassignment. ID at 27-30. The appellant argues that the administrative judge failed to consider the documentary evidence showing that immediately prior to his reassignment he went to great lengths to assist CE. PFR File, Tab 1 at 18-19. The appellant also argues that the administrative judge erred in finding credible his supervisors' unsubstantiated claim that he was reassigned because of his poor relationship with senior CE personnel, which made it impossible for him to effectively serve as their legal advisor. *Id.* at 18. This is a mischaracterization of both the testimony and the initial decision.

¶20 The appellant's first-level and second-level supervisors both testified that his reassignment became necessary when the appellant claimed that senior CE personnel were subjecting him to a hostile environment. Hearing Compact Disc (HCD). The appellant's OSC complaint corroborates this testimony. In his OSC complaint, the appellant states that he informed his supervisor that he was being harassed by CE personnel after raising concerns about the controlled burns and their "unprofessional conduct was creating a hostile work environment, seriously effecting [his] work." IAF, Tab 1, Ex. 3 at 1 (Narrative of Events). The fact that the appellant continued to work with CE on the controlled burn project is not disputed. As explained by the administrative judge, there is considerable evidence in the record that the appellant's interactions with senior members of the CE staff were at times contentious and had adversely affected his ability to serve as their legal advisor. ID at 5-6, 10-11, 16, 19. However, the appellant's

first-level supervisor was clear in his testimony that the poor relationship between the appellant and CE leadership, which had existed for years, was not the basis for the reassignment. HCD. The initial decision finds credible the appellant's supervisors' testimony that the reassignment became necessary only when the appellant alleged that he was being subjected to a hostile work environment. ID at 28-30.

¶21    The appellant asserts that the administrative judge erred in finding credible his supervisors' testimony that reassigning the appellant was their "only option" for responding to his complaint of a hostile work environment because they had no authority over the CE staff. PFR File, Tab 1 at 19. This misstates both the initial decision and the hearing testimony. The initial decision credits the appellant's supervisors' testimony that temporarily reassigning the appellant addressed his hostile work environment allegation while also benefitting the SJA's office by having the appellant work in another area during a staffing shortage. ID at 17. The appellant appears to argue that, rather than responding to his hostile work environment allegations internally, the SJA's office could have raised the issue with the installation commander, who had supervisory authority over both the SJA's office and CE. PFR File, Tab 1 at 19. The record does not contain any evidence that harassment allegations made by similarly situated employees who were not whistleblowers were handled in this manner; therefore, we find that this argument is speculative.

¶22    The appellant notes that his performance evaluation prior to his reassignment concluded that he had fulfilled all job requirements, highlighted success in various endeavors with the CE staff, and included no reference to personality issues. *Id.* The record also includes the appellant's first-level supervisor's statement that he wanted to see improvement in the appellant's relationship with CE, noting that there had been improvement "but there is still a great deal of friction." IAF, Tab 36, Exs. Q2-Q4. Moreover, as stated *supra* ¶ 18, the agency has not cited to performance deficiencies as the reason for the

appellant's reassignment. The appellant's first-level supervisor testified that he had no problems with the appellant's legal conclusions. Rather, the testimony of the appellant's first-level and second-level supervisors and documentary evidence make clear that the reassignment was precipitated by the appellant's allegation that he was being subjected to a hostile work environment by senior members of the CE staff. HCD; IAF, Tab 1, Ex. 1.

¶23    The agency has presented strong evidence supporting the issuance of the reprimand. The appellant admits that he failed to follow his supervisor's instruction to copy him on two emails to clients concerning substantive legal issues, but he asserts that, since it only happened 2 times in 2 months, it was a trivial event that did not warrant a reprimand. PFR File, Tab 1 at 19. The appellant argues that the administrative judge failed to consider his written reply to the proposed reprimand.[5] *Id.* The administrative judge's failure to mention all of the evidence of record does not mean that he did not consider it in reaching his decision. *Diggs v. Department of Housing & Urban Development*, 114 M.S.P.R. 464, ¶ 8 (2010). The initial decision reflects that the administrative judge thoroughly analyzed this issue. ID at 31-32. In his reply, the appellant admits that he failed to follow his supervisor's instruction. IAF, Tab 1, Ex. 5. The appellant's admitted failure to follow his supervisor's instruction provides strong support for the issuance of the reprimand. The WPA is not a shield for insubordinate conduct. *Lachance*, 174 F.3d at 1381.

¶24    The appellant argues that the administrative judge failed to question why the instruction to copy his supervisor on substantive legal advice was necessary for an attorney with his background and experience. PFR File, Tab 1 at 20. The appellant's reply to the proposed reprimand makes a similar argument. IAF, Tab 1, Ex. 5. To support this argument, the appellant cites to his position

---

[5] The initial decision cites to the appellant's response to the proposed reprimand. ID at 14. Therefore, we assume by "reply" the appellant is referring to the document entitled "response to the decision to issue a reprimand." IAF, Tab 1, Ex. 5 at 8-9.

description, which states that an attorney in his position is expected to operate with a great deal of independence and autonomy. PFR File, Tab 1 at 20; IAF, Tab 36, Ex. Q1. The appellant's first-level and second-level supervisors testified that the instruction was necessary so that they were aware of legal advice the appellant had provided if they were asked questions when the appellant was unavailable. HCD. Specifically, "higher headquarters" had asked them about advice the appellant had given while he was on leave for several days and they felt "blind-sided" by this. HCD (testimony of second-level supervisor). Wanting to avoid that situation in the future, they asked the appellant to copy his supervisor on substantive legal advice. *Id.* The administrative judge found this testimony credible. ID at 32-33.

¶25    The mere fact that the appellant disagreed with the instruction is not a justification for his failure to follow it.[6] *See Cooke v. U.S. Postal Service*, 67 M.S.P.R. 401, 407-08 (explaining that an employee does not have the unfettered right to disregard an instruction because there is reason to believe it is not proper), *aff'd*, 73 F.3d 380 (Fed. Cir. 1995) (Table). The administrative judge found incredible the appellant's testimony that he was confused by the instruction based in part on his observation of the appellant's demeanor. ID at 32. The Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). The appellant's admitted failure to follow his supervisor's instruction is strong evidence in support of issuing the letter of reprimand.

---

[6] Although there may be instances where an employee may be justified in not following a supervisory instruction, such as where the directive is illegal or obeying it could be dangerous, those circumstances are not present here.

¶26 The second *Carr* factor is the strength of the motive to retaliate. In this case, in addition to the bases relied on by the administrative judge in reaching this same conclusion, ID at 33, we find that the appellant's supervisor had little motive to retaliate because he was not the subject of the appellant's disclosure or protected activity. The appellant's disclosures and protected activity concerned allegations of wrongdoing by CE. Both the appellant's first-level and second-level supervisors testified they had no authority over the CE staff. As found by the administrative judge, to the extent that members of the CE staff had a stronger motive to retaliate, it is undisputed that they did not make the decision to reassign the appellant or issue him the reprimand. *Id.*

¶27 The appellant alleges that his first-level supervisor was motivated to retaliate because the appellant disclosed his supervisor's violations of the American Bar Association (ABA) Model Rules of Professional Conduct. IAF, Tab 36, Ex. F-2; PFR File, Tab 1 at 18. However, this disclosure was not raised in the appellant's OSC complaint. IAF, Tab 1, Ex. 3. To exhaust his remedy with OSC, an appellant must inform OSC of the precise ground of his charged of whistleblowing. *Tucker v. Department of Health & Human Services*, 73 M.S.P.R. 278, 283 (1997). The basis for determining the nature of an appellant's charges of whistleblowing to OSC is the statement he made in his OSC complaint seeking corrective action and not any subsequent characterization of his whistleblowing in his appeal to the Board. *Id.* (citing *Serrao v. Merit Systems Protection Board*, 95 F.3d 1569, 1577 (Fed. Cir. 1996)). The Board lacks jurisdiction to consider the appellant's claim that he was retaliated against for disclosing that his supervisor violated the ABA Model Rules of Professional Conduct because that claim was not contained in his OSC complaint.

¶28 It does not appear that the agency entered any evidence into the record establishing that it takes similar actions against employees who are not whistleblowers, but who are otherwise similarly situated, which is the third *Carr* factor. The agency's failure to present evidence that it took similar actions

against employees who were not whistleblowers, but who were otherwise similarly situated to the appellant, could support a finding that the agency failed to prove by clear and convincing evidence that it would have taken the same action against the appellant in the absence of his protected disclosure. *Chambers v. Department of the Interior*, 116 M.S.P.R. 17, ¶ 70 (2011) (relying in part on the fact that the agency is in control of the records that could document whether similar personnel actions have been taken in other cases). The Board does not view the *Carr* factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but will weigh the factors together to determine whether the evidence is clear and convincing as a whole. *See Mithen v. Department of Veterans Affairs*, 122 M.S.P.R. 489, ¶ 36 (2015). Given the weakness of the appellant's supervisors' motive to retaliate and the strength of the agency's reasons for reassigning the appellant and issuing the reprimand, we find that the lack of evidence regarding similarly situated employees who are not whistleblowers does not undermine the clear and convincing evidence supporting the agency's actions. *Id*.

The administrative judge did not abuse his discretion in rulings on discovery, the admissibility of evidence, or the witnesses approved to testify at the hearing.

¶29 The appellant argues that the administrative judge abused his discretion by denying his motions to compel discovery. PFR File, Tab 1 at 20-22. Discovery is the process by which a party may obtain relevant information from another party to an appeal. 5 C.F.R. § 1201.72(a). Any motion to compel discovery must be filed with the administrative judge within 10 days of the date of service of objections or, if no response is received, within 10 days after the time limit for response has expired. 5 C.F.R. § 1201.73(d)(3). According to the appellant, he served initial discovery requests on October 2, 2014. IAF, Tab 28 at 11. Based on the administrative judge's order, IAF, Tab 2 at 2-3, the agency's responses to the appellant's discovery requests were due on October 22, 2014, and any subsequent motion to compel discovery was due 10 days later on November 3,

2014, *see* 5 C.F.R. § 1201.73(d). The appellant filed a motion to compel discovery on November 14, 2014. IAF, Tab 19. The appellant's motion to compel discovery was denied as untimely. IAF, Tabs 23, 27.

¶30        The appellant argued below that he did not timely file his motion to compel because, based on the dates set in the acknowledgment order, it was due prior to the administrative judge's ruling on jurisdiction and would have been "premature." IAF, Tab 25 at 6-7. We do not agree. We also do not agree with the appellant's argument that based on the administrative judge's ruling, a party would be forced to file a motion to compel discovery at the first indication of nonresponsiveness or lose his opportunity for discovery. PFR File, Tab 1 at 23. The acknowledgment order stated that the parties could request that the administrative judge waive the time limits for discovery set forth at 5 C.F.R. § 1201.73(d). IAF, Tab 2 at 3. The appellant could have requested an extension of the discovery deadlines pending a ruling on jurisdiction. He also could have requested additional time to attempt to resolve the discovery dispute from the administrative judge prior to the expiration of the deadline to file a motion to compel. He did neither. We find no abuse of discretion in the administrative judge enforcing the discovery time limits in the absence of a request for an extension by the appellant.

¶31        The appellant also argues that the administrative judge's rulings on the witnesses approved to testify at the hearing were arbitrary. PFR File, Tab 1 at 24-28. The administrative judge conditioned approval of witnesses on certification from the parties that they had discussed or attempted to discuss the anticipated testimony with the requested witnesses. IAF, Tab 40 at 3, Tab 42 at 1. The appellant did not comply with the administrative judge's order. IAF, Tab 42 at 1. It is well settled that an administrative judge has broad discretion to control the course of the hearing before him. *Lopes v. Department of the Navy*, 119 M.S.P.R. 106, ¶¶ 9-12 (2012). Rulings regarding the exclusion of evidence are subject to review by the Board under an abuse of discretion

standard. *Id.* We find no abuse of discretion by the administrative judge denying the appellant's witnesses based on his failure to discuss their anticipated testimony in advance. Without talking to the witnesses the appellant could not confirm the accuracy of his proffers. The appellant may be suggesting that this requirement was difficult to comply with because witnesses were not available due to holidays. PFR File, Tab 1 at 27. However, there is no indication in the record that the appellant tried to comply with the order or requested an extension of time because the witnesses were unavailable. We find no abuse of discretion in the administrative judge denying the appellant's request for witnesses when he failed to comply with the order to discuss the anticipated testimony with the witnesses. *See Franco v. U.S. Postal Service*, 27 M.S.P.R. 322, 325 (1985) (finding that an administrative judge has wide discretion to exclude witnesses where it has not been shown that their testimony would be relevant, material, and nonrepetitious).

¶32    The appellant claims that the administrative judge failed to consider substantial documentary evidence he presented supporting his claim. PFR File, Tab 1 at 11. Citing to *Whitmore,* the appellant argues that the administrative judge erred by not allowing him to "go over" the more than 1,600 pages of documentary evidence in the record during the hearing and not independently considering this evidence in rendering his decision. PFR File, Tab 1 at 12-13. The appellant has not shown that the administrative judge failed to consider these documents. As stated above, the administrative judge's failure to mention all of the evidence of record does not mean that he did not consider it in reaching his decision. *Diggs*, 114 M.S.P.R. 464, ¶ 8.

¶33    An administrative judge has the authority to regulate the course of a hearing. 5 C.F.R. § 1201.41(b)(6). During the hearing, the administrative judge allowed both parties to ask witnesses questions about the documentary evidence in the record, but consistently ruled that reading or recapping the content of documents already in the record was unnecessary. We find no abuse of discretion

in the administrative judge's ruling that witnesses should not read or recapitulate documents already in the record for the sake of judicial efficiency. Both parties were permitted to submit closing briefs after the hearing. IAF, Tabs 45-46. The appellant could have provided any additional explanation necessary about the documentary evidence in his closing brief.

¶34        The appellant alleges that the administrative judge erred when he sua sponte considered his prior IRA appeal. PFR File, Tab 1 at 28. In describing the appellant's work history, the administrative judge noted that the appellant filed a prior IRA appeal against his former agency. ID at 2. The appellant asserts that neither party introduced evidence regarding this prior appeal into the record. PFR File, Tab 1 at 28. An adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision. *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984). It does not appear that the administrative judge considered this prior appeal in rendering his decision, although the same administrative judge adjudicated both appeals and so presumably knew about it in that way. Even if the administrative judge considered this appeal as background information, the appellant has not shown that he was harmed, except to assert that there was the "potential for unfair prejudice." PFR File, Tab 1 at 29. The appellant has not shown that he was prejudiced by the inclusion of a reference to his prior appeal in the initial decision; therefore, this argument provides no basis for disturbing the initial decision. In any event, the appellant has failed to show that the administrative judge acted improperly. *See Wadhwa*, 110 M.S.P.R. 615, ¶ 7 (finding it appropriate for the Board to take official notice of the appellant's letter in a prior Board appeal and the Board's finding in the earlier case that the appellant's disclosures in that letter were protected).

¶35        We have considered all of the arguments the appellant has raised on review regarding the administrative judge's credibility findings and findings of fact. We find that the appellant's assertions, which constitute mere disagreement with the

administrative judge's credibility determinations and factual findings, provide no basis for disturbing the initial decision. *See Diggs*, 114 M.S.P.R. 464, ¶ 8. Because the agency has proven by clear and convincing evidence that it would have reassigned the appellant and issued him a reprimand in the absence of his protected disclosures and activity, we conclude that the appellant is not entitled to corrective action.

## NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. You may choose to request review of the Board's decision in the U.S. Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both. Once you choose to seek

review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information about the United States Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:  _____
                William D. Spencer
                Clerk of the Board

Washington, D.C.